**UNITED STATES DISTRICT COURT**

**DISTRICT OF MAINE**

| | | |
|---|---|---|
| **RUTH EZEKIEL,** | ) | |
| | ) | |
| **PLAINTIFF** | ) | |
| | ) | |
| v. | ) | No. 2:09-cv-450-DBH |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL SECURITY,** | ) | |
| | ) | |
| **DEFENDANT** | ) | |

**DECISION AND ORDER ON PLAINTIFF'S
MOTION FOR ATTORNEY FEES**

This is a dispute over the amount of attorney fees in a social security disability case. The lawyer has requested approval of the amount that his contingent fee agreement provides. The Commissioner says that results in an undeserved windfall to the lawyer.[1] I agree with the Commissioner and reduce the amount of the fee to be awarded out of the claimant's benefits.

**BACKGROUND**

Having been denied benefits in the administrative process, the claimant entered into a contingent fee agreement with her lawyer. She agreed to pay her lawyer 25% of any past due benefits he obtained for her and her child as a result of representing her thereafter in federal court. Contingent Fee Agreement at 3 (Docket Item 13-2). What the lawyer did for the claimant next was: file a boilerplate federal court complaint (it said nothing about this

---

[1] The claimant has not taken a position.

claimant's case) together with a motion to proceed in forma pauperis, and arrange for service of process. The Commissioner's lawyer then immediately moved for a remand, the claimant's lawyer reviewed the remand motion and associated papers, agreed to them, and sought and obtained attorney fees from the Commissioner under the Equal Access to Justice Act for his work in federal court—$544.90 for a total of 3.1 hours' work.[2] Itemization of Att'y Fees (Docket Item 9-1). Thereafter, the lawyer provided additional legal services to the claimant in the administrative process that followed the remand, and ultimately recovered $49,704 in past due benefits for the claimant and her child. Plaintiff.'s Corrected Mot. for Award of Att'y Fees at 1 (Docket Item 14-1). According to the contingent fee agreement, that success generates a total attorney fee of $12,426. The Commissioner has already approved payment of $6,000 for the post-remand work under 42 U.S.C. § 406(a). Notice of Awards at 3 (Docket Item 13-1). Now under 42 U.S.C. § 406(b), the claimant's lawyer seeks approval of the remaining $6,426 for his work in this federal court. Plaintiff.'s Corrected Mot. for Award of Att'y Fees at 5.

In Siraco v. Astrue, 806 F. Supp. 2d 272 (D. Me. 2011), I followed the teachings of Gisbrecht v. Barnhart, 535 U.S. 789, 796 (2002), as informed by Crawford v. Astrue, 586 F.3d 1142, 1148 (9th Cir. 2009) and Jeter v. Astrue, 622 F.3d 371 (5th Cir. 2010), to take the focus off the lodestar analysis (reasonable hourly rate multiplied by reasonable time spent) in determining

---

[2] The previous award of fees and expenses against the Commissioner under the Equal Access to Justice Act in the amount of $544.90 will have to be refunded to the claimant once I approve recovery of fees out of the benefits obtained. Contingent Fee Agreement at 2 (Docket Item 13-2).

whether the fee produced by a contingent fee agreement is reasonable. Instead, Gisbrecht approved "looking first to the contingent-fee agreement, then testing it for reasonableness." Gisbrecht, 535 U.S. at 808. A 25% contingent fee agreement is reasonable, indeed customary[3], for these cases. Gisbrecht nevertheless endorsed fee reductions "based on the character of the representation and the results the representative achieved," and based on attorney-caused delay that drives up the size of the award (by accumulating benefits). Id. at 808. Here, none of those apply: the lawyer gave excellent representation, ultimately achieved complete success (for which the first step was filing the case in this court), and caused no delay that would drive up his fee.

What remains is one more Gisbrecht observation: "If the benefits are large in comparison to the amount of time counsel spent on the case, a downward adjustment is similarly in order." Id. That observation—large benefits in comparison to lawyer time (here 3.1 hours)—indisputably applies here. For such a situation, Gisbrecht instructs:

> In this regard, the court may require the claimant's attorney to submit, not as a basis for satellite litigation, but as an aid to the court's assessment of the reasonableness of the fee yielded by the fee agreement, a record of the hours spent representing the claimant and a statement of the lawyer's normal hourly billing charge for noncontingent-fee cases.

Id. The 2009 contingent fee agreement here states that the lawyer would ordinarily bill in excess of $135 per hour. Contingent Fee Agreement at 3 (Docket Item 13-2). The 2009 EAJA fee application tells me that he spent 3.1

---

[3] Crawford, 586 F.3d at 1147 (citing Gisbrecht, 535 U.S. at 800).

hours in his federal court efforts and that he was routinely approved for fees at $225 per hour or higher and in one recent Social Security case had been approved at $395 per hour. Aff. of Francis Jackson at 2 (Docket Item 9-2). Calculated at the lodestar highest hourly rate, therefore, the fee would be $1,225.

As Gisbrecht, Crawford and Jeter emphasize, however, the lodestar amount (hourly rates times hours) is *not* the starting point. There are a number of reasons. First, the Supreme Court has interpreted the statute to approve contingent fees (up to 25%) as the primary fee arrangement. Second, the rationale of contingent fee agreements is that the lawyer will be paid nothing in the cases he/she loses. Necessarily, therefore, the lawyer must generate significantly more than the lodestar in the cases he/she wins, in order to protect the lawyer's income as well as the overhead (rent, heat, light, insurance, staff, supplies, computer, etc.) that are required regardless, win or lose.[4] That is why Jeter requires something beyond a low lodestar number before a court can reduce a contingent fee award—"additional factors to support [the] determination that the contingency fee constitutes an unearned

---

[4] The contingent fee agreement here states:
> The parties have agreed to a full twenty five percent, rather than a lesser "reasonable" amount calculated on an hourly basis because the client acknowledges that there is a high risk of failure and resulting non-payment in these cases and that as a result the only way the attorney can afford to do these cases is to charge and collect a contingent fee sufficient to not only pay a reasonable fee when he is successful but also sufficient to pay personnel costs and other office overhead expended on those cases where he is unsuccessful and receives no payment.

Contingent Fee Agreement at 3.

advantage to the attorney—such that the fee award may be considered a windfall." Jeter, 622 F.3d at 377.⁵

Here, the lawyer was required to spend virtually no time on the federal lawsuit. That was not his fault. But it was an unearned windfall; he could not have expected that the mere filing of the boilerplate complaint—even before he laid out his arguments in the Itemized Statement of Errors or argued his case before the Magistrate Judge—would generate the success.⁶ He argues that work he had done in the unsuccessful administrative process *before* filing the lawsuit⁷ may have produced the quick remand. The Commissioner's lawyer partly disagrees, Defendant's Response to Motion for Attorney Fees at 5-6 (Docket Item 17), but it really doesn't matter, because the contingent fee agreement is for the services provided in federal court and thereafter, not before. There was no reason to believe that the unsuccessful argument before the administrative body would suddenly become successful upon the mere filing of a complaint. Thus, the successful outcome in court cannot be attributed solely to the filing of the complaint. Certainly the lawyer had to file

---

⁵ "[W]e read Gisbrecht as commanding that in order for district courts to rely on the lodestar method to find a particular fee constitutes a windfall, the district court must also articulate the factors that demonstrate to the court that the fee is unearned. Specifically, the district court must discuss the factors that demonstrate that the success on appeal is not of the attorney's making, but rather, is attributable to some other source for which it would be unreasonable to compensate the attorney." Jeter, 622 F.3d at 381.

⁶ In Rodriquez v. Bowen, 865 F.2d 739, 747 (6th Cir. 1989), one of the cases cited by Gisbrecht in support of disallowing windfalls, the court states: "Where a case has been submitted on boilerplate pleadings, in which no issues of material fact are present and where no legal research is apparent, the benchmark twenty-five percent of awards fee would obviously be inappropriate."

⁷ He refers to a letter he filed with the Decision Review Board on May 4, 2009. The contingent fee agreement was signed later, on July 30, 2009, "to provide legal services in connection with an appeal to United States District Court." Contingent Fee Agreement at 1. The federal lawsuit was filed September 16, 2009. Compl. (Docket Item 1).

the complaint as a precondition to his success, but the immediate remand was a not-to-be expected and an unearned outcome. I conclude that the fee should be reduced under the teachings of Gisbrecht, Crawford and Jeter.

The problem of course is what the amount of the reduction should be. Justice Scalia recognized in his Gisbrecht dissent[8] the difficulties created by the Gisbrecht majority's apparent endorsement of both the contingent fee agreement and the lodestar numbers. There is no mathematical answer to guide me or the lawyers in what is allowed and what is not.[9] Indeed, neither party here has given me any assistance on what the approved number should be (the claimant's lawyer's insists on the full contingent fee; the Commissioner's lawyer says reduce it, but not by how much). Since the contingent fee agreement is "primary," as a curb on my reduction for a windfall I take into account that litigating in federal court is generally a more expensive and difficult practice than in state court; that there must be significant profit in successful contingent fee cases so that lawyers can continue that form of

---

[8] "I do not know what the judges of our district courts and courts of appeals are to make of today's opinion. I have no idea what the trial judge is to do if he finds the fee produced by the ("presumptively reasonable") contingent-fee agreement to be 25% above the lodestar amount; or 40%; or 65%. . . . While today's opinion gets this case out of our "in" box, it does nothing whatever to subject these fees to anything approximating a uniform rule of law. That is, I think the inevitable consequence of trying to combine the incompatible. The Court tells the judge to commence his analysis with the contingent-fee agreement, but then to adjust the figure that agreement produces on the basis of factors (most notably, the actual time spent multiplied by a reasonably hourly rate) that are, in a sense, the precise antithesis of the contingent-fee agreement, since it was the very *purpose* of that agreement to eliminate them from the fee calculation." Gisbrecht, 535 U.S. at 809 (Scalia, J. dissenting).

[9] In Rodriquez, the court refused to "incorporate a scale or grid into this opinion or otherwise attempt to draw a line beyond which a fee becomes unconscionable. Perhaps the legislature in its wisdom will choose to do so after an exhaustive empirical and statistical survey." 865 F.2d at 747. Gisbrecht and later cases have followed that same line. In 2006, in Ellick v. Barnhart, 445 F. Supp. 2d 1166 (C.D. Cal. 2006), Magistrate Judge Eick analyzed 43 reported social security attorney cases after Gisbrecht and found "considerable divergence and scant evidence of any 'uniform rule of law.'" Id. at 1168.

practice and so that claimants can find legal representation (representation would often be unavailable without the contingent fee arrangement); and that this lawyer has been specializing in these cases for many years and has become proficient and efficient.  I therefore approve an attorney fee of Three Thousand Six Hundred Seventy-five Dollars ($3,675—three times the lodestar) and I direct that the claimant's lawyer pay to his client the earlier EAJA award of Five Hundred Forty-Four Dollars and Ninety Cents ($544.90).[10]  Like the Magistrate Judge in Ellick, I acknowledge "the regrettable imprecision of [this] analysis," 445 F. Supp. 2d at 1173, but the caselaw leaves me no alternative.  I hasten to add, however, that a contingent fee agreement ordinarily should govern, and that only in the exceptional situations that Gisbrecht, Jeter and Crawford feature should a judicial officer need to recalculate the fee.

**SO ORDERED.**

**DATED THIS 6TH DAY OF APRIL, 2012**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[10] Thus, the lawyer's net fee will be $6,000 plus $3,675 for a total of $9,675, an effective contingent fee percentage of approximately 19.5% of the overall $49,704 recovery.  The claimant pays somewhat less than the total because she will receive the EAJA award of $544.90.